## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON DIVISION

| | |
|---|---|
| In re | |
| MARIA E. WARMBOLD, | Chapter 7 |
| Debtor | Case No. 3-14-bk-13212 |
| TOMLINSON VENTURES, LLC | |
| Plaintiff | Adv. Pro. No. |
| -vs- | |
| MARIA E. WARMBOLD | |
| Defendant | |

### ADVERSARY COMPLAINT OBJECTING TO DISCHARGE

Tomlinson Ventures, LLC ("Tomlinson"), by and through its undersigned counsel, by way of complaint objecting to the discharge of Maria Warmbold ("Warmbold" or the "debtor"), respectfully alleges as follows:

### INTRODUCTION

1.     Warmbold is undeserving of a discharge because she is committing fraud. In December 2012 she settled a lawsuit arising out of a business relationship with Tomlinson and signed a personal guaranty in favor of Tomlinson as part of the settlement documents. She then defaulted under the settlement and Tomlinson

{00928846}

sued her and her husband Donald Warmbold in New Jersey Superior Court and obtained a judgment on October 10, 2013 in the amount of$144,000.00 plus attorney's fees of $2,751.00 and costs of $344.00.

2.     Tomlinson has been trying to collect that judgment, but Warmbold and her husband, Donald "Stubby" Warmbold, have engaged in a scheme to defraud creditors, and now continue that fraud through the misuse of the bankruptcy code. Warmbold seeks to be relieved of the payment obligation to Tomlinson while retaining for herself and her husband their expensive home, their luxury automobiles, their lavish lifestyle, and all of the various company business entities used by her and her husband to defraud creditors.

3.     To accomplish this fraud and obtain a discharge, Warmbold filed a false and materially inaccurate petition. Yet even as she filed her petition, she continues to profit through family businesses that she owns or controls. Under the circumstances Warmbold's petition must be denied. She cannot be relieved of her obligation to Tomlinson while at the same time retaining the valuable assets that she is hiding from the court, the Trustee, Tomlinson and other creditors.

## JURISDICTION AND VENUE

4.     This an adversary proceeding brought under 11 U.S.C. §§ 727(a)(4)(A) and (B), 727(a)(2), 727(a)(3), 727(a)(4) and Federal Rules of Bankruptcy Procedure 7001(1) & (4).

{00928846}

5.      The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334.

6.      The adversary proceeding is a core proceeding.

7.      Venue is proper pursuant to 28 U.S.C. § 1409(a).

## ALLEGATIONS COMMON TO ALL COUNTS

8.      Upon information and belief, Warmbold has earned, and continues to earn, tens of thousands of dollars through the operation of various entities owned and/or controlled by her, her husband and/or other insiders/family members.

9.      Warmbold's business operations involve, *inter alia,* the manufacture and sale of finished wood products such as furniture, millwork and flooring from trees that have fallen, are being removed for construction or are saved from demolished buildings.

10.     Debtor and her husband co-founded the family business, currently named Metro Wood Group (http://metrowoodgroup.com), in 1991 to provide a valuable source of quality lumber, cabinetry, millwork and a wide variety of finished wood products. .

11.     Debtor and her husband have formed and operate and/or control a number of other companies, including but not limited to CitiLog, for repurposing urban trees into architectural millwork and furniture, Black Locust Lumber USA, for domestic, rot resistant, hardwood for decking, siding and benches, Rosie's Natural

{00928846}

Way, representing Dubbletten and Aquatron, waste sorting toilets and composting systems from Sweden, and Biomacht, biomass, carbon neutral, combined heat and power units.

12.     Debtor and her husband are sophisticated, skillful and knowledgeable business persons, operating a variety of businesses and utilizing various corporate forms here and in Canada to transfer and hide monies to avoid creditors.

13.     Several years ago Tomlinson was a business partner with the Warmbolds, but Tomlinson had to sue the Warmbolds to salvage its investment, and the Warmbolds settled with Tomlinson, agreeing to a payout of Tomlinson's interest.

14.     Currently, Tomlinson is owed more than $144,000.00 on account of Warmbold's failure to pay, which amount was reduced to a New Jersey State Court Judgment in 2013.

15.     On February 26, 2014 Warmbold filed a Voluntary Petition for relief under Chapter 7 of Title 11 of the United States Code, with accompanying Schedules.

16.     In her petition, Warmbold under penalty of perjury listed many debts for which she is not personally liable, concealed her true circumstances and misrepresented her income, assets, liabilities and employment status.

{00928846}

17.    In her petition Warmbold lied about her employment status and monies received by her attributable to employment. Warmbold was employed throughout 2013, and in fact, remains an essential member of the family businesses which she co-founded with her husband and has operated continuously for over 20 years. At the First Meeting of Creditors Warmbold was questioned under oath about roughly $200,000.00 of deposits into her personal bank account during 2013. She stated the payments were from her husband's company in Canada, at first claiming they were to cover living expenses and then, when pressed to explain if the monies paid were for services, she claimed they were for "marketing services" she had provided to the company. This admission contradicts her sworn statements in the petition since Warmbold represented therein that she was unemployed since March 2013. Warmbold lists -0- as her income from employment on Schedule I, a blatant lie, since her bank deposits and Hearing Testimony at the First Meeting of Creditors, given under oath and duly recorded, contradict that sworn statement, and establish that she made deposits of over $160,000.00 which she now only under questioning admits was income. It is notable that the deposits in question were made throughout the year, well beyond March 2013.

18.    Warmbold continues to present herself as an employee of her company, Metro Wood Group, on the company website and in company

{00928846}

descriptions (e.g. American Landscape Architecture Society course). As a co-founder, she plays a critical role in sales, marketing, financial oversight, shipping as well as managing employees and contractors. The businesses appear to be doing well as they continue to support at least 5 employees in addition to Warmbold and her husband, Donald. The Warmbolds continue to travel to trade shows (and for pleasure) and frequently share updates on their business success on social media (e.g. recent projects with Swarthmore College, Brooklyn Botanical Gardens, donations made to Lester D. Wilson Elementary, etc.)

19.     Warmbold intentionally and willfully misrepresented her employment status to deceive the Court, the Trustee, Tomlinson and other creditors on critical aspects of her bankruptcy petition.

20.     Warmbold failed to disclose substantial income in 2013 in her petition.

21.     A review of activity in one of Warmbold's bank accounts from 12/11/12 to 12/10/13, the year immediately preceding her bankruptcy filing, shows deposits totaling $212,187.48. Per her statement under oath under penalty of perjury at the First Meeting of Creditors, the majority of the deposits were payments for marketing work that she performed for her husband's Canadian company. Recently, in the State Court proceeding which continues against Donald Warmbold (who has curiously not filed for bankruptcy himself), Donald Warmbold claims that the Canadian company that has paid his wife, the debtor herein, approximately

{00928846}

$200,000.00 in 2013 was sold in April 2013 to a third party (the alleged third party is actually an insider, a close relative of the Warmbolds). This claim by the Warmbolds makes the payments to the debtor even more suspect.

22.     Not only did Warmbold have consistent monthly deposits in 2013, she demonstrated consistent monthly payments of her $4,071.00 mortgage. In addition, there were consistent expenditures on *luxury* items including a $660.00 monthly payment for a 2012 BMW X5 as well as expenses indicating 4 trips (3 to Europe and 1 to California).

23.     The Statement of Financial Affairs in the petition lists Warmbold's gross income in 2012 as $233,758.00 and in 2011 $263,614.00. Warmbold fails to disclose even an estimate of her income for 2013.

24.     A review of Warmbold's bank records for 6 months of 2012 also reveals significant deposit activity ($51,170.00) above and beyond her reported salary from the family business. However, there is not a corresponding accounting for that income in her 2012 Tax Return.

25.     Warmbold intentionally and willfully misrepresented her income and expenses to deceive the Court, the Trustee, Tomlinson and other creditors on critical aspects of her petition.

26.     Warmbold is attempting to retain her 3,800 square foot house in Hunterdon County and a pricey luxury BMW after the bankruptcy is complete.

{00928846}

Warmbold must believe that her income will be sufficient to support such a lavish lifestyle. Such an assumption is inconsistent with the $-0- she attests is her current income as well as her husband's claim of $-0- income  Simply put, there is no way, based upon her sworn statement of $-0- income that she can even pay her mortgage and the BMW, which alone are almost $5,000.00 per month.

27.    The Warmbold family businesses are doing well and as shown in Warmbold's bank records for 2013, Warmbold will have more than sufficient income to meet her obligations and avoid a bankruptcy. Her desire to retain two costly assets that have virtually no equity strongly suggests she knows that her income will be more than sufficient to maintain a very high standard of living.

28.    Warmbold intentionally and willfully misrepresented her ability to pay for these assets, which indicates that Warmbold knows that she will have ample income in the near future to pay for her lavish lifestyle, thus perpetrating a fraud upon the Court, the Trustee, Tomlinson and other creditors on critical aspects of her bankruptcy petition.

29.    Warmbold failed to report or under reported several other significant assets, including:

a.    Warmbold did not report that she is the co-owner of 2011 BMW 335d which has no lien, except to Tomlinson.

b.    Warmbold did not disclose in her petition the settlement of her

mother's estate that was reached in December 2013 with her brother, Joseph Maione. When questioned at the First Meeting of Creditors about this material omission, Warmbold had to disclose a settlement for $50,000.00 which she claimed had been reached, but she also claimed that all of the proceeds were used to pay taxes and attorney fees. There is no proof of what money she received or what she did with this money. Given she was seeking closer to $188,000.00 from her brother, Warmbold's claim of $50,000.00 needs to be corroborated. Moreover, payments of taxes and attorney's fees (if truly made as she claimed) are suspect since she lists many open items of attorney's fees owed to her prior counsel as well as outstanding taxes. Moreover, these payments, if made in December 2013 or thereafter, clearly are preferential payments and should be recovered by the Trustee.

c.    In Schedule B Personal Property, the reference to a UCC-1 in the amount of $150,000.00 against CitiLog Transportation LLC is creditor fraud since the assets were pledged to 1609727 Ontario Inc., a company owned/controlled by an insider, the debtor's husband, Donald Warmbold. Recent information obtained in the

related State Court proceeding against Donald Warmbold shows

that Mr. Warmbold *claims* to have sold this company in 2013 to

his uncle for nominal or no consideration.

d.   Warmbold is also one of two beneficiaries of her father's estate

which has never been probated despite his death in 2012. This

material fact was omitted from the bankruptcy petition.

e.   Warmbold has also been serving as the Estate Trustee and

acting as Attorney in Kind for her   elderly aunt, Virginia Fleck.

Warmbold acted as the Attorney in Kind for the sale of Virginia

Flick's home in December 2013.  Upon information and belief

the proceeds of that sale are being held in trust until such time

as the Estate can be settled since Virginia Flick has sufficient

income to cover her nursing home expenses. These material

facts and Warmbold's compensation for her role as trustee and

potential inheritance were omitted from the bankruptcy

petition.

f.   Warmbold misrepresented the contents of her house. Upon

information and belief a significant amount of new furniture

was purchased over the past 3 years which is inconsistent with

Warmbold's low value of personal property shown in the

petition.  Warmbold has a custom-made, specialty wood dining room table that is worth at least half of the claimed value of all furniture.

30.    Warmbold failed to report, under reported, and intentionally and willfully misrepresented several significant assets, thus perpetrating a fraud upon the Court, the Trustee, Tomlinson and other creditors on critical aspects of her bankruptcy petition.

31.    Warmbold is not personally responsible for +98% of the debts she claims to owe on Schedule F. In the First Meeting with Creditors Warmbold admitted that only $300,000.00 of the $6.7 million listed debt had any personal recourse attached to it.  Based upon a review of the petition Warmbold's estimate is wrong and the number is actually closer to $69,180.00 plus the $147,095.00 she personally guaranteed as part of the settlement with Tomlinson. Of the 48 claimed "creditors", Tomlinson appears to be the *only* creditor taking legal action against Warmbold in an effort to secure payment. (Surprisingly, the amount owed Tomlinson was omitted from her list of creditors despite there being a Judgment in place for a specific amount, $147,095.00.)

32.    $6,614,196.00, or 98.6% of total debts shown on Schedule F, are creditors of CitiLog Enterprises LLC that have no known personal guarantees or other agreements that would hold Warmbold personally responsible for the debts.

{00928846}

33.    Several of the other claimed creditors are suspect and questionable. For example, Wolff & Samson was *never* a creditor of Warmbold or CitiLog Enterprises LLC. In fact, Wolff & Samson represented Tomlinson in litigation against CitiLog Enterprises LLC, Warmbold and Donald Warmbold.  MW Wood Enterprises Inc. is shown as a creditor yet Warmbold owns 100% of that business.

34.    At a minimum, these material discrepancies and omissions warrant further investigation as to the validity of these debts and the nature of Warmbold's responsibility for repayment. Without further clarification, they are further evidence of her attempt to deceive the Court, the Trustee, Tomlinson and other creditors and fraudulently misrepresent her financial status.

35.    Warmbold intentionally and willfully misrepresented her personal debt, thus perpetrating a fraud upon the Court, the Trustee, Tomlinson and other creditors on critical aspects of her petition.

36.    Warmbold omitted key bookkeeping, accounting and financial contacts from her petition.

37.    Specifically, there are three individuals with in-depth knowledge of the financials of Warmbold and her companies that should be called upon to support the investigation of Warmbold's true financial situation and the state of her businesses. Warmbold fraudulently omitted key persons with knowledge of her financial affairs in an effort to keep the Trustee from finding out the truth.

{00928846}

38.   Warmbold and her husband operate their family business through a complex group of legal entities designed to obfuscate their business affairs and facilitate improper business practices.

39.   Despite establishing numerous different legal entities over the past years, Warmbold and her husband operate a relatively simple family business from their residence in Pittstown, NJ.  With the exception of one logger in West Virginia, they do not have any employees, own any assets, or conduct any operations outside of their Pittstown, New Jersey office. Warmbold plays an active and key role as owner, co-owner and/or employee in all of these entities.

40.   The company in Canada, 1609727 Ontario Inc. – the one which Warmbold reluctantly disclosed that she received over $160,000.00 in compensation in 2013 marketing work for -- is simply a shell company. Revenue and expenses booked to that company originate from US based customers via the Pittstown, New Jersey family business office. There are no employees or operations conducted in Canada. The Warmbolds decide which entity to book revenue and expenses to, thus allowing them to elect to selectively reference only the entities with little or no business activity and falsely portray the state of the family business. For example, only some of their business entities were reported on their 2012 tax return (significantly, for example, income the Canadian company and others was omitted).

{00928846}

41.    In addition, the UCC filings Warmbold references in her petition are an example of creditor fraud. Warmbold purports to have pledged all personal and select business assets to an entity owned/controlled by her husband, and now allegedly by another close family member, his uncle, clear insiders.

42.    The multitude of legal entities utilized by Warmbold is designed to cloud the truth, evade taxes, and frustrate legitimate enforcement of judgments. And it now is used to perpetrate a fraud upon the Court, the Trustee, Tomlinson and other creditors.

43.    Warmbold's petition should be denied and an investigation of bankruptcy fraud should be initiated.   It is clear by her own admission that Warmbold is actively employed in the companies she co-founded and manages with her husband. It is clear that she has willfully under reported her 2012 income and omitted her income for 2013 declaring      $-0-, despite expecting to be able to maintain a hefty mortgage, luxury car leases and lavish travel. It is also clear she concealed assets gained through the settlement of her mother's estate as well as her co-ownership in a full-owned BMW 3-series, personal items such as jewelry.

44.    Warmbold also testified at the First Meeting of Creditors that she sold thousands of dollars' worth of personal jewelry, though no records of the items sold, including who bought them and what happened to the proceeds, have been produced.

{00928846}

45.    Despite the long list of creditors, over 98% of the listed debt does not have personal recourse against Warmbold. Some of the creditors listed are outright fraudulent (e.g. Wolff & Samson). She does not require bankruptcy relief to address the limited debts she has personally guaranteed or is personally responsible for.

46.    The Trustee should be empowered to seize control of the various business entities owned and/or controlled by Warmbold so that the Trustee can determine where all of the revenues generated by these companies are being diverted.

47.    The Warmbolds are actively committing fraud, not only in the bankruptcy court, but also in the State Court proceeding still pending against Mr. Warmbold, and also in their tax filings. They are actively seeking to hinder, delay and thwart the legitimate collection of debts they owe to creditors.

48.    Tomlinson is the only creditor of either Warmbold or her husband who is actively pursuing collection of the debt owed. Warmbold should not be allowed to scrape off one legitimate creditor through this fraudulent bankruptcy claim. Tomlinson sued the Warmbolds in New Jersey Superior Court in August 2013, the Warmbolds did not defend, and Tomlinson obtained a judgment for over $147,000.00. Within days of the Warmbolds being served with the Tomlinson's State Court Complaint, the Warmbolds fraudulently attempted to pledge or encumber all of their assets to a Canadian company owned/controlled by the Warmbolds.

{00928846}

49.     In the State Court action Donald Warmbold has resisted every effort to allow Tomlinson to discover assets to satisfy the judgment. He continues to refuse to turn over documentation relating to the family businesses, and may be subject to a daily monetary fine for his non-compliance as well as civil arrest.

50.     The Warmbolds have committed extensive fraud. They have fraudulently structured their assets to keep them out of the reach of creditors, and use an elaborate scheme to make Mr. Warmbold appear judgment proof while funneling money to Mrs. Warmbold to support their lavish lifestyle. This was admitted by Warmbold at the First Meeting of Creditors.  Warmbold testified that she received the large recurring payments in 2013 (payment she failed to report as income) from the Canadian company owned by her husband, she first said that she needed the money for living expenses. But when then pressed on whether the money was earned, she then stated that the payment to her were for marketing services.  Since the Warmbolds have elected to book revenue from the family business in New Jersey to a Canadian shell company owned/controlled by Mr. Warmbold, there must be documentation of payments to Maria Warmbold as an employee or as an independent contractor. We doubt there are any actual records either with the Ontario company or Warmbold herself properly acknowledging the work she performed and thereby subjecting the associated payments to income taxes and employment taxes. The Trustee should demand the production of all

{00928846}

relevant employment related documentation required by the Federal and State governments for employees and independent contractors that support the payments Warmbold claims she received from her husband's Canadian company.

51.    The Warmbolds use the Canadian entity, which is out of reach of New Jersey creditors, to illegally transfer money to themselves.  This is a hoax, and a fraud on the Court, the Trustee, Tomlinson and other creditors.

52.    There is substantial evidence demonstrating that the debtor's schedules contain numerous material deficiencies, errors and omissions concerning interests held by the debtor in various corporate entities.

53.    The debtor omitted material information which might lead to the discovery of assets or transfers of assets. The debtor failed to include all of her interests in several businesses, failed to disclose her income from her involvement with several businesses, failed to disclose her relationship as an owner, officer and/or director of a several entities during the six years preceding the bankruptcy and that she had sole possession of property which was in the name of a business she had concealed.

54.    Debtor is married, though she has filed her bankruptcy petition individually.  Her husband, with whom she lives and operates all of the various family owned business entities, has not filed bankruptcy.  And more significantly, debtor has failed to include any of her husband's financial information on her filing

{00928846}

as required.

55.      The cumulative effect of all the falsehoods and omissions together evidences a pattern of reckless and cavalier disregard for the truth and that the reason for this action, as well as numerous other actions undertaken by the debtor, was to evade collection efforts on the part of the Plaintiff.

### FIRST COUNT

### OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727(a) 4(A) and (B) FOR MAKING A FALSE OATH OR ACCOUNT AND/OR FOR PRESENTING A FALSE CLAIM

56.      Tomlinson repeats and re-alleges each and every allegation contained in the previous paragraphs as if set forth herein at length.

57.      727(a)(4) provides that a debtor will not receive a discharge if "the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account; (B) presented or made a false claim.

58.      Warmbold signed statements attesting, under penalty of perjury, that the information on the Petition and Schedules was true and correct.

59.      Notwithstanding that Warmbold attested under penalty of perjury that the contents of her Chapter 7 Petition were true and correct, she failed to disclose income derived from company business owned by her and family members, her interest in various companies, and the existence of and value of personal assets.

{00928846}

60.     Notwithstanding that Warmbold attested under penalty of perjury that the contents of her Chapter 7 Petition were true and correct, she failed to disclose the identities and information pertaining to several individuals with extensive knowledge of her and her business entities' financial affairs, thus depriving the Court, the Trustee, Tomlinson and other creditors of complete and accurate intonation about her assets.

61.     Warmbold intentionally did not disclose the existence of the undisclosed income and assets in order to conceal their existence from the Court, the Trustee, Tomlinson, and other creditors.

62.     By virtue of the foregoing, Warmbold should be denied a discharge for having knowingly and fraudulently made false oaths in her case in the form of false statements on sworn documents filed with the Court and providing for such other relief as is just and proper, including an award to compensate Tomlinson for attorneys' fees and costs incurred in the prosecution of the proceeding.

## SECOND COUNT

## OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727(a)(2) FOR THE TRANSFER AND CONCEALMENT OF PROPERTY WITH INTENT TO DEFRAUD CREDITORS

63.     Tomlinson repeats and re-alleges each and every allegation contained in the previous paragraphs as if set forth herein at length.

{00928846}

64.     727(a)(2) provides that the debtor will not receive a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed – (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of filing of the petition.

65.     The facts sets forth above demonstrate that the debtor violated this section by participating in the transfer of various family owned business entities to other family members, transfers of assets to other family members, sold off assets and converted them to cash and disposed of or concealed the cash,  and made preferential payments to select creditors.

66.     By virtue of the foregoing, Warmbold should be denied a discharge for having transferred, removed, destroyed, mutilated, or concealed valuable assets with intent to defraud creditors, and the Court should award such other relief as is just and proper, including an award to compensate Tomlinson for attorneys' fees and costs incurred in the prosecution of the proceeding.

{00928846}

## THIRD COUNT

### OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727(a)(3)
### FOR FAILING TO KEEP OR PRESERVE RECORDS

67.    Tomlinson repeats and re-alleges each and every allegation contained in the previous paragraphs as if set forth herein at length.

68.    727(a)(3) provides that the debtor will not receive a discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transaction might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

69.    Upon information and belief, Warmbold has concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers from which her business transactions respecting the family businesses, assets, income and other matters relating to the debtor's financial condition.

70.    By virtue of the foregoing, Warmbold should be denied a discharge for having concealed, destroyed, mutilated, falsified, or failed to keep or preserve records.

{00928846}

WHEREFORE, Tomlinson respectfully requests that the Court enter judgment denying Warmbold a discharge and providing for such other relief as is just and proper, including an award to compensate Tomlinson for attorneys' fees and costs incurred in the prosecution of the proceeding.

## FOURTH COUNT

## OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727(a)(4) FOR WITHHOLDING RECORDS

71.     Tomlinson repeats and re-alleges each and every allegation contained in the previous paragraphs as if set forth herein at length.

72.     727(a)(4) provides that a debtor will not receive a discharge if "the debtor knowingly and fraudulently, in or in connection with the case  (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

73.     Upon information and belief, Warmbold has withheld recorded information, including books, documents, records, and papers from which her business transactions respecting the family businesses, assets, income and other matters relating to the debtor's financial condition.

{00928846}

74.    By virtue of the foregoing, Warmbold should be denied a discharge for having concealed, destroyed, mutilated, falsified, or failed to keep or preserve records.

WHEREFORE, Tomlinson respectfully requests that the Court enter judgment denying Warmbold a discharge and providing for such other relief as is just and proper, including an award to compensate Tomlinson for attorneys' fees and costs incurred in the prosecution of the proceeding.

May 20, 2014

By: /s/ Patrick D. Tobia
Patrick D. Tobia, Esq.
**MORGAN MELHUISH ABRUTYN**
651 W. Mt. Pleasant Avenue
Suite 200
Livingston, N.J. 07039
Tel: (973) 994-2500
Fax: (973) 994-3375
E-mail: ptobia@morganlawfirm.com
Attorneys for Plaintiff Tomlinson Ventures LLC

{00928846}